# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

| | | |
|---|---|---|
| **RALPH ANDERSON, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:14-cv-00129-SLC** |
| | ) | |
| **DEPARTMENT OF VETERANS** | ) | |
| **AFFAIRS, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

This is an employment discrimination and retaliation action in which Plaintiff Ralph
Anderson, Jr., alleges that Defendant Department of Veterans Affairs ("the VA"), failed to hire
him on the basis of his race, in violation of Title VII, and retaliated against him for engaging in
statutorily protected activity, also in violation of Title VII.  (DE 1 ¶¶ 31, 33).  Before the Court is
a motion for summary judgment filed by the VA.  (DE 23).  This motion has been fully briefed
by the parties (DE 24, 29, 30, 33), and is now ripe for adjudication.  For the reasons explained
herein, the VA's motion for summary judgment will be DENIED.

## I.  LEGAL STANDARD

On a motion for summary judgment, "[t]he court shall grant summary judgment if the
movant shows that there is no genuine dispute as to any material fact and the movant is entitled
to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment may be granted only
if there are no disputed genuine issues of material fact.  *Payne v. Pauley*, 337 F.3d 767, 770 (7th
Cir. 2003).  When ruling on a motion for summary judgment, a court "may not make credibility
determinations, weigh the evidence, or decide which inferences to draw from the facts; these are

jobs for a factfinder." *Id.* The only task in ruling on a motion for summary judgment is "to

decide, based on the evidence of record, whether there is any material dispute of fact that requires

a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

If the evidence is such that a reasonable factfinder could return a verdict in favor of the

nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770 (citation

omitted). A court must construe the record in the light most favorable to the nonmoving party

and avoid "the temptation to decide which party's version of the facts is more likely true[,]" as

"summary judgment cannot be used to resolve swearing contests between litigants." *Id.* (citation

omitted). However, "a party opposing summary judgment may not rest on the pleadings, but

must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771

(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

## II. FACTUAL AND PROCEDURAL BACKGROUND

Anderson is an African-American male who has never served in the military. (DE 24-8 at

4; DE 24-5 at 50; DE 30-1 ¶ 2). Anderson initially applied for a position as an air conditioning

mechanic at the VA Northern Indiana Health Care System ("NIHCS") in October 2008. (DE 24-

5 at 6; DE 24-6 at 19; DE 24-9; DE 30-1 ¶ 9). At the time of Anderson's initial application, the

director of the NIHCS was Cathi Spivey-Paul; the associate director who supervised the

engineering department was Deborah McCormick; the manager of the engineering department

was Charles Applewhite; and the manager of human resources was Brian Flynn. (DE 24-6 at 66-

67).

Anderson was selected as one of five candidates to interview for the open air conditioning

mechanic position. (DE 24-5 at 14-15; DE 24-6 at 19; DE 24-9). The interviewers asked all of

the candidates the same questions and then scored the candidates based on their answers; the selecting official, Applewhite, would then select the candidate who would be offered the position. (DE 24-6 at 21-23, 75; DE 30-2 at 19). While Applewhite could select any candidate, he had to justify his reasons if he chose a candidate with a lower score over one with a higher score. (DE 24-6 at 22). Applewhite typically selected the candidate with the highest interview score, unless there was a matter "of real concern." (DE 24-6 at 75).

Applewhite selected Anderson for the open air conditioning mechanic position on December 3, 2008. (DE 24-5 at 17; DE 24-10; DE 30-1 ¶ 11; DE 30-2 at 14-16). Anthwon Cooper, a human resources specialist, called Anderson to inform him that he had been selected for the position. (DE 24-5 at 15). Flynn, the human resources manager, decided that Anderson would be de-selected. (DE 24-5 at 17; DE 24-11). Cooper called Anderson again to tell him that he had been de-selected from the position and no one would be selected at that time. (DE 24-5 at 16). Anderson filed a discrimination complaint, which he later agreed to withdraw after mediation, in exchange for a two-year term appointment as an air conditioning mechanic at NIHCS Fort Wayne. (DE 24-5 at 17-18; DE 24-12; DE 24-18; DE 30-1 ¶ 19). The mediation settlement agreement was approved by Spivey-Paul and was also signed by Flynn and Cooper. (DE 24-6 at 61-62; DE 24-18).

During the time Anderson worked at NIHCS for his two-year term position, he had no negative experiences or problems based on his race or based on the fact he was hired in settlement of his discrimination complaint. (DE 24-5 at 23-24). In May 2010, while Anderson was working at NIHCS, Dwight Loveless, who was white and who had been working as a housekeeping aide for the VA, settled a discrimination claim against the NIHCS. (DE 24-5 at 43,

54; DE 24-6 at 33-36, 42-43; DE 24-14; DE 24-17; DE 30-4 at 24). Loveless received a permanent air conditioning mechanic position in settlement of his discrimination claim. (DE 24-6 at 35-36; DE 24-17; DE 30-4 at 24). Flynn approved Loveless's promotion to settle his discrimination case. (DE 30-3 at 7). Loveless's settlement was also approved by Interim Director Kimberly Radant, who took over on an interim basis after Spivey-Paul had left the director position. (DE 24-6 at 62-63, 68; DE 24-17). Anderson did not file any complaints regarding Loveless's hiring to the permanent position. (DE 24-5 at 47, 56).

During Anderson's term position, all of his evaluations were satisfactory or better. (DE 30-1 ¶ 25). His supervisors also stated that he did good work. (DE 30-10 at 5-6). Anderson's two-year term position ran from August 2009 to October 2011. (DE 30-1 ¶ 24). As his term was coming to an end, Anderson requested that his term be converted to a permanent position or that his term be extended. (DE 30-1 ¶ 26). While term positions are "seldom converted" to permanent positions, extensions of term positions are "more likely to happen than not" at the NIHCS, and there was a continuing need for an air conditioning mechanic after the expiration of Anderson's term. (DE 30-2 at 30). The VA denied Anderson's requests for conversion to a permanent position or extension of his term (DE 30-1 ¶¶ 26-27), and his term expired on October 8, 2011 (DE 24-8 at 4; DE 24-13; DE 30-1 ¶ 27).

In early 2012, the NIHCS announced three open air conditioning mechanic positions in Fort Wayne. (DE 24-6 at 43-45; DE 24-8 at 9-10; DE 24-15; DE 30-1 ¶ 28). Anderson applied for these positions. (DE 24-5 at 25; DE 24-8 at 9-10; DE 30-1 ¶ 29). Anderson was one of five candidates who were selected to interview telephonically. (DE 24-5 at 26; DE 24-15; DE 24-24; DE 24-25). One candidate dropped out, which left Anderson, Mark Coleman, Mark Sewell, and

Michael Duzan as the candidates to be interviewed. (DE 24-24). Other than Anderson, the interviewing candidates were all white. (DE 24-5 at 26; DE 24-25; DE 30-1 ¶ 32). Duzan served as a member of the Air Force in the Persian Gulf war zone during Operation Desert Storm. (DE 24-7 at 10-11; DE 24-20; DE 24-21; DE 24-22; DE 30-6 at 10-11). Duzan was therefore veterans' preference eligible. (DE 24-7 at 10-11; DE 24-20; DE 24-21; DE 24-22). Duzan also had prior work experience in heating and air conditioning at both the residential and industrial levels, as well as experience with the Indiana National Guard. (DE 24-7 at 9-11; DE 24-20; DE 24-21). Sewell and Coleman were not veterans. (DE 30-2 at 46; DE 30-8 at 13).

The interviewers of the candidates were Tom Foisy, an air conditioning mechanic at the NIHCS, Don Wigner, who replaced Runda as plant foreman, and John Hendricks, who was an engineering supervisor in Marion, Indiana. (DE 24-5 at 20, 27-28; DE 24-19). Anderson had previously worked with both Foisy and Wigner during his term position, and he had not had any negative interactions with either of them. (DE 24-5 at 27-29). Anderson had never met Hendricks before. (DE 24-5 at 29-30). The interviewers asked questions of each of the candidates and scored the candidates based on their answers. (DE 24-6 at 21-22; DE 24-19). Coleman received 266.5 points; Sewell received 207 points; Anderson received 171.5 points; Duzan received 162.5 points. (DE 24-6 at 71; DE 24-19). On April 6, 2012, Applewhite selected Coleman, Sewell, and Anderson for the three open positions. (DE 24-6 at 45-46; DE 24-15). Gay Andrick-Nieman, a human resources specialist, called Anderson to tell him that he had been selected for the position, which would begin on May 7, 2012. (DE 24-5 at 32; DE 24-16; DE 24-25; DE 30-3 at 12-13).

On April 10, 2012, Renae Jacobson, the assistant human resources officer, realized that

Duzan was a preference-eligible veteran who had been passed over for a position in violation of federal law.  (DE 24-2 ¶¶ 5, 7; DE 24-3 ¶ 5; DE 24-4 ¶ 5; DE 24-16).  Jacobson notified Amanda Dean, who had replaced Flynn as human resources manager, and Helen Rhodes, who was the new associate director who supervised the engineering department, about the mistake that had been made by passing over Duzan.  (DE 24-2 ¶¶ 5, 9; DE 24-3 ¶ 5; DE 24-4 ¶ 5; DE 24-5 at 41-42; DE 24-6 at 50, 68-69; DE 24-16).  Jacobson contacted the VA's delegating examining unit ("the DEU"), which must approve the passing over of any preference-eligible veteran, to ask if it would be possible to pass over Duzan.  (DE 24-2 ¶¶ 7-8; DE 24-16; DE 30-3 at 11).  The DEU informed Jacobson that the VA needed to hire Duzan if he wanted the position, because he was a preference-eligible veteran.  (DE 24-2 ¶¶ 7-8; DE 24-16; DE 30-3 at 11).  Jacobson confirmed that Duzan did want the position.  (DE 24-2 ¶¶ 7-8; DE 24-16).

Jacobson met several times with Dean and Rhodes to discuss de-selecting one of the applicant's job offers in order to give one of the positions to Duzan, because there would not be any other positions coming open in the future.  (DE 24-2 ¶¶ 10, 12; DE 24-3 ¶ 7; DE 24-4 ¶ 6; DE 24-6 at 47-50; DE 24-16; DE 30-3 at 11).  Rhodes was Dean's direct supervisor, and Jacobson was an assistant to Dean.  (DE 24-2 ¶ 2; DE 24-4 ¶ 2).  While Dean and Jacobson did not know Anderson's race and did not know that he had previously filed a discrimination claim against the VA (DE 24-2 ¶¶ 13-14; DE 24-3 ¶¶ 10-11; DE 24-5 at 42), Rhodes did know that Anderson was African American, and she also knew that he had previously filed a discrimination claim against the VA.  (DE 24-4 ¶ 10; DE 30-10 at 8-9).  Rhodes knew that Anderson had obtained his temporary position as a result of the settlement of his prior discrimination claim.  (DE 30-10 at 9).  After meeting with Dean and Rhodes, Jacobson "was told to rescind the offer

from Ralph Anderson, Jr." (DE 24-16; DE 30-3 at 11). While there was not "one individual" who made the decision to de-select Anderson, Rhodes participated in, at least to some extent, Anderson's de-selection. (AR 24-4 ¶ 9; AR 30-10 at 8).

On April 23, 2012, Andrick-Nieman called Anderson and told him he had been de-selected for the position. (DE 24-5 at 34; DE 24-25). Approximately a week later, Andrick-Nieman called Anderson again to tell him that the reason for his de-selection was that he had "jumped a vet on the certification letter" who "had veteran preference." (DE 24-5 at 37-38). Anderson filed an internal complaint with the VA on August 11, 2012, alleging that he had been discriminated against on the basis of his race and retaliated against after engaging in protected activity. (DE 24-25).

On January 14, 2013, in a letter responding to questions posed to her by an EEO investigator, which was signed "under penalty of perjury," Andrick-Nieman stated that "[a]ll of the candidates interviewed were veterans, except for Mr. Anderson." (DE 30-3 at 12-13). Andrick-Nieman explained that Anderson was "selected in error" because "there was a veteran on the list ahead of him," whom she believed had been passed over because the veteran's name was on the back side of a double-sided piece of paper. (DE 30-3 at 13). Andrick-Nieman stated that "[t]he veteran in question was actually ranked the highest out of all the candidates . . . ." (DE 30-3 at 13). Andrick-Nieman concluded that "[s]ince Mr. Anderson was the only non-veteran, he was the one that was de-selected." (DE 30-3 at 13).

Also during January 2013, Rhodes answered questions posed to her by an EEO investigator during a telephonic examination. (DE 30-10). Rhodes explained that during the selection of the air conditioning mechanics, there was an error and "they realized that technically

they had passed over a veteran to select a nonveteran," so "then they had to go back and correct that mistake." (DE 30-10 at 7). Rhodes stated that she "believe[d] [Anderson] was the only one that was a non-veteran, but [she was] not positive." (DE 30-10 at 8).[1]

The VA denied Anderson's claim on February 27, 2014. (DE 24-26). Anderson then filed the instant lawsuit on April 24, 2014. (DE 1).

## III. ANALYSIS

The VA argues that it is entitled to summary judgment on both of Anderson's Title VII claims. The Court will address the VA's arguments regarding Anderson's discrimination claim before turning to the VA's arguments regarding Anderson's retaliation claim.

### A. Anderson's Discrimination Claim

In Count I of his complaint, Anderson alleges that the VA violated Title VII by failing to hire him because of his race. (DE 1 ¶ 31). The VA contends that Anderson has no evidence to support his claim for discrimination, and further contends that there are no genuine issues of material fact regarding his race discrimination claim. Thus, the VA moves for summary judgment on this claim.

---

[1] There is also an undated letter from Jacobson in the record, in which she states that after she found out a veteran had been passed over for an air conditioning mechanic position, she contacted the DEU, which told her that they could not pass over the veteran; she then "offer[ed] the position to the non-Veteran to ensure that they did in fact want it," and "worked with HRO to determine the best way to determine which applicant we would rescind the job offer from." (DE 24-16; DE 30-3 at 11). Jacobson met with Applewhite and Rhodes about the situation and asked if there would be any additional positions opening up, but since there were not, she advised them of the plan to rescind the job offer from a non-veteran with the lowest number of interview points. (DE 24-16; DE 30-3 at 11). When Jacobson calculated that Anderson had the least interview points, she informed Dean and Rhodes; Jacobson "was told to rescind the offer from Anderson." (DE 24-16; DE 30-3 at 11). Because this statement from Jacobson does not include the date it was signed, the Court does not know whether Jacobson made the statement soon after Anderson's de-selection or at a later time.

Under Title VII, it is "an unlawful employment practice for an employer" "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove discrimination under Title VII by either the direct or indirect methods. *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 815 (7th Cir. 2015).

"Under the 'direct method,' the plaintiff may avoid summary judgment by presenting sufficient evidence, either direct or circumstantial, that the employer's discriminatory animus motivated an adverse employment action." *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). "'Direct' proof includes both evidence explicitly linking an adverse employment action to an employer's discriminatory animus and circumstantial evidence that would permit the trier of fact to infer that discrimination motivated the adverse action." *Morgan v. SVT, LLC*, 724 F.3d 990, 995 (7th Cir. 2013) (citations omitted). While the Seventh Circuit has used the "metaphor of a mosaic whose individual tiles add up to a complete picture" in order to illustrate the concept of the circumstantial evidence that must be presented to satisfy the direct method of proof, it has made clear that there is no "esoteric 'mosaic test' or theory." *Id.* Rather, the requirement is merely that "the circumstantial evidence must be strong enough, taken as a whole, to allow the trier of fact to draw the necessary inference." *Id.* Examples of such circumstantial evidence "include '(1) ambiguous statements or behavior towards other employees in the protected group; (2) evidence, statistical, or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (3) evidence that the employer offered a pretextual reason for an adverse employment action.'" *Id.* at 995-96 (quoting *Diaz v. Kraft*

*Foods Global, Inc.*, 653 F.3d 582, 587 (7th Cir. 2011)).  Thus, where a "plaintiff can assemble from various scraps of circumstantial evidence enough to allow the trier of fact to conclude that it is more likely than not that discrimination lay behind the adverse action, then summary judgment for the defendant is not appropriate, and the plaintiff may prevail at trial even without producing any 'direct' proof." *Id.* at 996.

The "indirect method," developed by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), "refers to a particular way of using circumstantial evidence at the summary judgment stage." *Morgan*, 724 F.3d at 996.  The indirect method "employs a burden-shifting approach under which the plaintiff must initially show that:  (1) he is a member of a protected class, (2) he met his employer's legitimate job expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees outside of the protected class received more favorable treatment." *Id.* (internal quotation marks and alteration notation omitted) (quoting *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012)).  If a plaintiff has evidence that meets these four requirements, "a presumption of discrimination is triggered," and "'[t]he burden then must shift to the employer to articulate some legitimate nondiscriminatory reason' for its action." *Coleman*, 667 F.3d at 845 (quoting *McDonnell Douglas*, 411 U.S. at 802).  "When the employer does so, the burden shifts back to the plaintiff, who must present evidence that the stated reason is a 'pretext,' which in turn permits an inference of unlawful discrimination." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804).

The Seventh Circuit has, "over the past several years," "questioned the utility of the distinctions between" these two methods of proof, "recognizing that both methods of proof converge on the same fundamental question:  could a reasonable trier of fact infer retaliation or

discrimination, as the case may be?" *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 564 (7th Cir. 2015) (citations omitted).

### 1. The Direct Method

The VA argues that Anderson cannot establish race discrimination under the direct method because he has admitted that he never had any problems or negative experiences based on his race while he was employed by the VA, and he has not produced any evidence that anyone involved in the 2012 interview or hiring process made any racially derogatory comments. (DE 24 at 12).

In his response brief, Anderson argues that he can prove discrimination under the direct method because he "has presented a convincing mosaic of circumstantial evidence that points to a discriminatory intent by [the VA]." (DE 29 at 17). Anderson's "convincing mosaic of circumstantial evidence" includes the absence of any African-Americans among the air conditioning mechanics employed by the VA at NIHCS; Anderson's de-selection for the air conditioning mechanic position after his 2008 application; his appointment to a two-year term air conditioning mechanic position to settle his discrimination claim relating to the 2008 application, when Dwight Loveless, a Caucasian with little air conditioning experience, was given a permanent air conditioning mechanic position to settle his discrimination claim; the VA's refusal to give Anderson a permanent position or a term extension at the expiration of his two-year term, even though the VA then posted an opening for three air conditioning mechanic positions; Anderson's de-selection in 2012, for which he contends the VA has offered changing pre-textual reasons, initially stating that all the other candidates were veterans, but then stating that one candidate was a veteran and the other candidates had higher interview scores; and the VA's 2015

posting of air conditioning mechanic positions that are open only to internal candidates, which prevents Anderson from applying. (DE 29 at 17-19).

The VA addresses these arguments in its reply brief, stating that Anderson has not shown a convincing mosaic of circumstantial evidence because the circumstantial evidence cited by Anderson does not "point directly to a discriminatory reason for the employer's action." (DE 33 at 6). Specifically, the VA contends that Anderson has offered no evidence that any other African-Americans applied for air conditioning mechanic positions at the VA NIHCS, and thus the fact that none of the four or five air conditioning mechanics there are African-American does not create an inference of discrimination; that Anderson's comparison of his settlement to that of a Caucasian employee does not create an inference of discrimination, particularly as the VA never admitted to discrimination in either case that settled; that there were different decision makers, which means there is no basis to infer discrimination; that Applewhite's inability to remember the particulars of the 2012 de-selection process does not create a direct inference of discrimination; that Anderson's term position ended as was the normal course of action for term positions, which does not create an inference of discrimination; that the 2015 internal-only advertising of an air conditioning mechanic position in accordance with a union contract, which had not been filled, does not create an inference of discrimination; and that Rhodes's knowledge of Anderson's race and prior discrimination charge do not create an inference of discrimination, as her subordinates—who had no knowledge of Anderson's race or prior discrimination charge—made the recommendation to Rhodes that Anderson's offer be rescinded. (DE 33 at 6-10).

Anderson has not presented any direct evidence, such as statements by a decision maker

that he was not hired because of his race.  Instead, he relies on circumstantial evidence to prove his discrimination claim under the direct method.  The most important piece of circumstantial evidence to which Anderson points in support of his discrimination claim under the direct method is the VA's changing reasons for his selection to and de-selection from the air conditioning mechanic position in 2012.  Anderson and the VA appear to be in agreement that Duzan, who was a veteran and thus had preference in hiring, had been passed over.  (DE 24 ¶¶ 46-47; DE 29 at 18).  The parties appear to disagree, however, regarding the reason that Coleman and Sewell, the other Caucasian applicants, retained their job offers while Anderson's job offer was rescinded.  Anderson states in the argument portion of his response brief that, "[i]nitially, Defendant said Mr. Anderson was not selected because he w[a]s not a veteran and Coleman and Sewell were veterans."  (DE 29 at 18).  Anderson contends that "[t]his reason is clearly pretext because Coleman is not a veteran and Sewell is not a veteran to Defendant's knowledge."  (DE 29 at 18).  Anderson states that the VA knew that Coleman and Sewell were not veterans from the same certificate of eligibility that informed the VA of Duzan's veteran status, and Anderson argues that the VA has "changed its[] story and now says that Mr. Anderson was de-selected because of interview scores."  (DE 29 at 19).

Turning to the evidence in the record, Gay Andrick-Nieman, the Human Resources Specialist at the VA NIHCS, initially called Anderson to inform him that he had been de-selected, and she later called him to tell him that the reason why he had been de-selected was that he had "jumped a vet on the certification letter" who "had veteran preference."  (DE 24-5 at 38).  Andrick-Niemen then provided a statement on behalf of the VA in response to questions by an EEO investigator on January 14, 2013, explaining what had taken place regarding Anderson's

application for the 2012 air conditioning mechanic position. (DE 30-3 at 12-13). In the statement, Andrick-Nieman explained that she called Anderson in April 2012 to notify him that he had been selected for the position, and she made a tentative offer to Anderson. (DE 30-3 at 12). Andrick-Nieman's statement continued:

> In Mr. Anderson's case, after we reviewed everything we ended up rescinding the offer. We reviewed the list of candidates, and found that Mr. Anderson was selected in error. He was not a veteran and there was a veteran on the list ahead of him. It is unlawful for a veteran to be selected ahead of a non-veteran. Should be: It is unlawful for a NON-VETERAN to be selected ahead of a VETERAN.
>
> All of the candidates interviewed were veterans, except for Mr. Anderson. Two veterans and Mr. Anderson were initially selected, but we reviewed the List and found that another veteran had been passed over in favor of Mr. Anderson. The list was a double-sided piece of paper and three names, including Mr. Anderson's were on the first side, and the third veteran's name was the only name on the other side. I believe that no one saw his name, which is why Mr. Anderson was initially selected. The veteran in question was actually ranked the highest out of all the candidates, but even if he were not ranked the highest he could not have been passed over in favor of a non-veteran as long as he was within a certain point range. All the veterans on the list were within the acceptable point range. Since Mr. Anderson was the only non-veteran, he was the one that was de-selected.
>
> About a week and a half after I made him a tentative offer, I called Mr. Anderson and explained that he was erroneously selected over a veteran and that we needed to rescind his offer.

(DE 30-3 at 13 (highlighting and apparent editing in original)).

Rhodes, who was the associate director for the VA NIHCS, was also questioned by an EEO investigator on January 7, 2013, with a transcript of that questioning part of the record in this matter. (DE 30-10). Rhodes explained that Anderson had been de-selected because the VA

had discovered an error in which "they had passed over a veteran to select a nonveteran," and "then they had to go back and correct that mistake." (DE 30-10 at 7). Rhodes further stated that she "believe[d] [Anderson] was the only one that was a non-veteran, but [she was] not positive," as "[i]t was either that was the case or the scoring of the panel, the others were rated higher based on their qualifications." (DE 30-10 at 8).

The VA has also submitted, in support of its motion for summary judgment, a declaration made by Jacobson, who was the Assistant Human Resources Officer at the VA NIHCS at the time of Anderson's application for the air conditioning mechanic position. (DE 24-2). Jacobson's declaration is incompletely dated but appears to have been made in November 2015. (DE 24-2). Jacobson states that she reviewed the certificate of applicants "and confirmed that a preference eligible veteran, Michael Duzan, was not selected, while three non-preference eligibles were selected for the vacancies and that HR Specialist Gay Andrick-Nieman had already called and offered all three non-veterans positions." (DE 24-2 ¶ 6). Jacobson states that she worked with Dean and Rhodes, among others, and they ultimately "decided the job offer should be rescinded from the non-veteran with the lowest number of interview points," which was Anderson. (DE 24-2 ¶¶ 9, 11). Another statement by Jacobson, which is undated, is consistent with Jacobson's declaration. (DE 24-16; DE 30-3 at 11). The VA has also submitted a declaration, dated November 20, 2015, from Rhodes, who was the associate director for the VA NIHCS at the time of Anderson's application; her declaration attests to the same information as Jacobson's declaration. (DE 24-4 ¶¶ 5, 7-8).

From this evidence, it is apparent that the VA's stated reasons for Anderson's de-selection have changed over time. When Andrick-Nieman called Anderson to tell him why he

had been deselected, she told him that he had "jumped a vet on the certification letter" who "had veteran preference." (DE 24-5 at 38). Anderson then filed a discrimination claim, and in the VA's January 2013 response, Andrick-Nieman stated that Anderson had been de-selected for the position because the other three candidates were all preference eligible veterans, and because the veteran who had been passed over "was actually ranked the highest out of all the candidates." (DE 30-3 at 13). Rhodes, in her January 2013 statements to an EEO investigator, also stated she believed Anderson had been de-selected "because he was the only one that was a non-veteran, but [she was] not positive." (DE 30-10 at 8). Now, in the affidavits filed to support the VA's summary judgment motion, the VA's stated reason for Anderson's de-selection is that the applicants with the three highest interview scores, including Anderson (who were all non-veterans), were initially selected, before the VA realized that Duzan, who had the lowest interview score, was a preference-eligible veteran who could not be passed over, and thus the VA decided to rescind the offer to Anderson, "the non-veteran with the lowest number of interview points." (DE 24-2 ¶¶ 5, 6, 9, 11-12).

"[E]vidence that the employer offered a pretextual reason for an adverse employment action" is one of the typical kinds of "circumstantial evidence that would permit the trier of fact to infer that discrimination motivated the adverse action." *Morgan*, 724 F.3d at 995-96 (citing *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 587 (7th Cir. 2011)). "Shifting and inconsistent explanations can provide a basis for pretext," "[b]ut the explanations must actually be shifting and inconsistent to permit an inference of mendacity." *Schuster v. Lucent Techs., Inc.*, 372 F.3d 569, 577 (7th Cir. 2003) (citing *Stalter v. Wal-Mart Stores*, 195 F.3d 285, 291 (7th Cir. 1999); *Rand v. CF Indus.*, 42 F.3d 1139, 1146 (7th Cir. 1994)).

Here, the VA has changed its story as to why it chose Anderson for de-selection. Reasoning provided by the VA in January 2013 by Andrick-Nieman and Rhodes told a story that Anderson was deselected because he was the only non-veteran of the candidates, that the passed-over veteran was ranked the highest of all the candidates, and that the passed-over veteran had been missed because he was on the back of the page. This previous story is inconsistent with its current reason—that Duzan was the only veteran among the candidates, that Duzan had scored the lowest of all the candidates, and that Anderson was de-selected because he was the non-veteran with the lowest interview score. The shifting, inconsistent reasoning is evidence of pretext, and it is persuasive circumstantial evidence that provides an inference of discriminatory animus. *See Stalter*, 195 F.3d at 291 (finding the employer's changed reason for firing the employee to be "evidence of pretext, and entitles [the employee] to a trial on the issue of the reason for his termination"); *Safi v. Royal Jordanian Airlines*, No. 08 C 7365, 2010 WL 4339434, at *3 (N.D. Ill. Oct. 25, 2010) (finding that the defendant's changing story as to why he did not hire the plaintiff was "valid circumstantial evidence of discrimination").

Anderson also offers other circumstantial evidence to support his claim that the VA chose not to hire him because of his race. First, he presents the fact that there are no African Americans employed as air conditioning mechanics at the NICHS facility. As noted by the VA, there are only four or five air conditioning mechanics at the facility, and Anderson has not shown that any other African Americans have ever applied for one of these jobs. (DE 24-5 at 23, 43). Without other supporting evidence that would permit an inference of racial discrimination to be drawn from this, the mere fact that there are no African American air conditioning mechanics at the VA NICHS facility does not create any inference of racial discrimination.

Anderson's next piece of circumstantial evidence is his 2008 de-selection from an air conditioning mechanic role at the NICHS for which he had initially been offered the position. Flynn was the decision maker in 2008, and any discriminatory animus held by Flynn cannot be imputed to the decision makers regarding Anderson's 2012 application, because Flynn was no longer employed at the VA NIHCS at the time of Anderson's application. (DE 24-6 at 68-69); *see Swanson v. Leggett & Platt, Inc.*, 154 F.3d 730, 733 (7th Cir. 1998) ("[T]he statements of a non-decision maker are imputed to the decision maker only if the former influenced the latter's decision." (citation omitted)); *see also Coleman*, 667 F.3d at 847-48 ("The inference of discrimination is weaker when there are different decision-makers . . . .").

While any animus by Flynn cannot be imputed to the 2012 decision makers, Anderson's 2008 application, selection, and de-selection for an air conditioning mechanic position at the VA NIHCS provides context for his de-selection in 2012. *See Coleman*, 667 F.3d at 854-55 ("[A]n evaluation of context is essential to determine whether an employer's explanation is fishy enough to support an inference that the real reason must be discriminatory." (quoting *Loudermilk v. Best Pallet Co.*, 636 F.3d 312, 315 (7th Cir. 2011))). Here, Anderson's de-selection in 2012 must be considered in the full context of the situation. Anderson's de-selection from the position in 2008 was followed by his filing of a discrimination claim, which the VA settled by giving Anderson a two-year term position as an air conditioning mechanic. Then, upon the expiration of his term position in October 2011, the VA did not extend Anderson's term, even though Applewhite testified that extensions are "more likely to happen than not," and even though, when taking the evidence in the light most favorable to Anderson and affording him every reasonable inference, there was a continued need for an air conditioning mechanic after Anderson's term expired. (DE

30-2 at 30). The VA then posted three open air conditioning mechanic positions in early 2012, even though it takes "months into years" for new positions to be approved and posted. (DE 30-1 ¶ 28; DE 30-2 at 31-33). When Anderson applied and interviewed for these three air conditioning mechanic positions in 2012, he was initially selected for a position but was again de-selected from the position, just as he had been de-selected from the 2008 position. (DE 30-2 at 31, 44-45).

This combination of Anderson's 2008 selection and de-selection, followed by the appointment to a term position in settlement of his discrimination claim, followed by the lack of extension of his term despite extensions being common and despite the continued need for air conditioning mechanics at the facility, followed by the quick posting of three open positions at NIHCS just a few months after his term expired even though it takes months or years for a new position to be approved and posted, provides context for his de-selection in 2012. This context permits an inference of discriminatory animus, particularly as Applewhite testified in his deposition that other than Anderson, he was not aware of any other situation where a selecting official had selected a candidate but that candidate was not ultimately hired. (DE 30-2 at 20-21). The fact that this selection and then de-selection happened to Anderson twice within four years, along with the VA's decision not to extend his term position despite the fact that extensions were likely to be granted and despite the continued need for air conditioning mechanics at the facility, together create a situation that is "fishy enough" to support an inference that the VA's real reason must be discriminatory. *See id.* at 859 (finding that summary judgment had been improperly granted to the employer on the employee's discrimination claims because there was a genuine issue of fact as to whether the employer's asserted reason was pretextual).

19

The next piece of circumstantial evidence Anderson offers is the better position received by a Caucasian employee to settle his discrimination claim, as Loveless received a permanent air conditioning mechanic position to settle his claim, while Anderson received only a two-year term position. (DE 29 at 17-18). While evidence "that similarly situated employees outside of the protected group systematically receive better treatment" is the type of circumstantial evidence that can create an inference of discrimination, *Morgan*, 724 F.3d at 995-96, Anderson's evidence that Loveless received a better settlement of his claim than Anderson did does not point to discriminatory intent. We know nothing regarding the particular details and context of Loveless's discrimination claim or settlement negotiations. Loveless may have received a permanent position in settlement of his claim for any number of reasons; perhaps he was a better negotiator and struck a better bargain, or there may have been other circumstances which placed the VA at greater risk of loss in Loveless's case if it did not settle. The VA's representatives who negotiated the settlement with Loveless may have been different individuals than those that settled Anderson's claim related to his 2008 application. Any number of moving pieces could have changed the outcome of the different settlement negotiations. As a result, this piece of circumstantial evidence does not point to a discriminatory reason, and the Court therefore cannot infer that the VA gave Loveless a better settlement of his case out of discriminatory animus against Anderson.

Anderson also points to the VA's 2015 posting of an air conditioning mechanic position that is only open to internal applicants as circumstantial evidence showing racial discrimination. The VA explains that this position was advertised internally pursuant to an agreement with the union, and was not motivated by any discriminatory animus. (DE 33 at 9 (citing DE 30-2 at 55

(Applewhite testified that he has "been told on a number of occasions that there's a union agreement that requires that all of our positions be advertised internally first before they go outside."))). Thus, the Court cannot infer a discriminatory animus based on the VA's 2015 posting of an air conditioning mechanic position for only internal applications.

To summarize, an inference of discrimination can be drawn from the VA's changing story regarding Anderson's 2012 de-selection, given the context provided by the series of negative employment actions taken against Anderson by the VA from 2008 to 2012. Because a reasonable trier of fact could infer discrimination, Anderson has satisfied the "fundamental question," and there is a question of fact as to whether the VA's stated reason for de-selecting Andreson was pretextual; thus, summary judgment should not be granted. *See Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 564 (7th Cir. 2015) (citations omitted); *see also Coleman*, 667 F.3d at 859.

## 2. The Indirect Method

The Court notes that even if Anderson had not met the requirements to proceed on his Title VII discrimination claim under the direct method, he has met the requirements to proceed under the indirect method. As the VA admits in its memorandum, Anderson "has made out a prima facie case" under *McDonnell Douglas*, "because he has shown (1) he is African-American, (2) he was qualified for the three open air conditioning mechanic positions, (3) he was rejected for the positions, and (4) the positions were filled with Caucasian applicants." (DE 24 at 13). Thus, the burden has shifted to the VA to produce a legitimate nondiscriminatory reason for its actions. *See Coleman*, 667 F.3d at 845 (quoting *McDonnell Douglas*, 411 U.S. at 802). The VA has produced evidence that the reason for Anderson's de-selection from the air conditioning

mechanic positions was "that it hired Duzan because he was veterans' preference eligible and hired Coleman and Sewell because they ranked higher in the interview process than Anderson." (DE 24 at 13-14; *see also* DE 24-2 ¶¶ 5-12; DE 24-3 ¶¶ 5-9; DE 24-4 ¶¶ 5-9).  This is a non-discriminatory reason for the VA's de-selection and non-hire of Anderson, and thus the burden shifts back to Anderson to "present evidence that the stated reason is a 'pretext,' which in turn permits an inference of unlawful discrimination."  *Coleman*, 667 F.3d at 845 (quoting *McDonnell Douglas*, 411 U.S. at 804).

Anderson has presented evidence that the VA's stated reason is pretextual, as its stated reason for de-selecting Anderson has changed over time.  As explained earlier, the VA claimed (in Andrick-Nieman's January 2013 response to the EEO investigation of Anderson's claim, which is not inconsistent with Rhodes's statements to an EEO investigator that same month) that its reason for de-selecting Anderson was that the other three candidates—Duzan, Coleman, and Sewell—were *all* preference eligible veterans; the VA also claimed that Duzan, who had been passed over, "was actually ranked the highest out of all the candidates."  (DE 30-3 at 13).  The VA's currently stated reason for de-selecting Anderson is that Anderson was originally selected for a position as one of the three applicants with the highest interview scores, but then the VA realized that Duzan, the applicant with the lowest interview score, was a preference-eligible veteran who could not be passed over; the VA then decided to rescind Anderson's initial offer because he was "the non-veteran with the lowest number of interview points."  (DE 24-2 ¶¶ 5-12).  "Shifting and inconsistent explanations can provide a basis for pretext," *Schuster*, 372 F.3d at 577 (citations omitted), and the VA's changing story here is evidence of pretext, when all facts are construed in the light most favorable to Anderson.  Thus, Anderson has met the requirements

to proceed with his Title VII claim for discrimination under the indirect method, preventing summary judgment.

## B. Anderson's Retaliation Claim

Anderson alleges in Count II of his complaint that the VA violated Title VII by retaliating against him for engaging in protected activity. (DE 1 ¶ 33). The VA contends that summary judgment is proper on Anderson's retaliation claim because it argues that Anderson cannot establish a causal link between Anderson's statutorily protected activity and the adverse employment action.

Under Title VII, employers are prohibited from retaliating against employees who engage in statutorily protected activity. 42 U.S.C. § 2000e-3(a). As with discrimination claims under Title VII, a plaintiff may prove his Title VII retaliation claim by either the direct or indirect methods. *Castro*, 786 F.3d at 564 (citing *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 740 (7th Cir. 2011)).

Under the direct method of proof for retaliation, "plaintiffs must offer evidence of three elements: (1) they engaged in protected activity, (2) they suffered adverse employment actions, and (3) there was a causal connection between the protected activity and the adverse employment actions." *Id.* (citing *Greengrass v. Int'l Monetary Sys., Ltd.*, 776 F.3d 481, 485 (7th Cir. 2015)). "To establish this causal link, plaintiffs can rely on direct or circumstantial evidence." *Id.* (citing *Harper v. C.R. England, Inc.*, 687 F.3d 297, 307 (7th Cir. 2012)). As discussed above with respect to the direct method for proving discrimination claims under Title VII, circumstantial evidence suffices to prove retaliation under Title VII "if 'a convincing mosaic of circumstantial evidence' would permit a reasonable trier of fact to infer retaliation by the employer." *Id.*

(quoting *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004)). In retaliation cases, there are three recognized "categories of circumstantial evidence available to a plaintiff using the 'convincing mosaic approach.' These categories include (1) evidence of suspicious timing, (2) evidence that similarly situated employees were treated differently, and (3) evidence that the employer's proffered reason for the adverse employment action was pretextual." *Id.* (citations omitted).

Under the indirect method of proof for retaliation, a plaintiff must first establish a prima facie case using the familiar *McDonnell Douglas* test. *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 841 (7th Cir. 2014). To prove retaliation under the indirect method, a plaintiff must show: (1) that he engaged in statutorily protected activity; (2) that he met his employer's legitimate expectations; (3) that he suffered an adverse employment action; and (4) that he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *See, e.g.*, *Boston v. U.S. Steel Corp.*, 816 F.3d 455, 465 (7th Cir. 2016) (citing *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 666 (7th Cir. 2006)). Where a plaintiff establishes a prima facie case, the burden shifts to the defendant to show a nondiscriminatory reason for its employment action. *Id.* If the defendant meets that burden, the burden shifts back to the plaintiff to demonstrate that the defendant's reason is pretextual. *Id.*

Just as with the analysis for discrimination claims made under Title VII, the Seventh Circuit has, "over the last several years, . . . questioned the utility of the distinctions between [the direct and indirect methods], recognizing that both methods of proof converge on the same fundamental question: could a reasonable trier of fact infer retaliation or discrimination, as the case may be?" *Castro*, 786 F.3d at 564 (citations omitted).

24

Because the parties only argue retaliation under the direct method, the Court too will only consider this method for purposes of summary judgment. The VA argues that Anderson cannot prove his Title VII retaliation claim under the direct method because he cannot show a causal link between his statutorily protected activity and the adverse employment action he contends was taken against him by the VA. Thus, the VA contends that Anderson cannot make out a prima facie case for retaliation under Title VII. The VA focuses on the "lengthy time difference" between Anderson's March 2009 statutorily protected activity and his adverse employment action in April 2012, the fact that Anderson stated he never had any negative encounters or experiences based on that complaint while he worked at the VA NIHCS during his two-year term position, and the fact that the decision makers in 2012 were not the same decision makers as in 2009 and were not even aware of his prior protected activity. The VA further argues that even if Anderson has shown a causal link, his retaliation claim would still fail because he cannot show that the VA's reason for failing to hire him was pretextual.

In response, Anderson argues that he can establish a prima facie case of retaliation under the direct method, because he engaged in statutorily protected activity when he filed a charge of race discrimination in 2009 against the VA, he suffered an adverse employment action when he was selected and then de-selected for the air conditioning mechanic position in 2012, and he can show a causal connection between the two by presenting a convincing mosaic of circumstantial evidence. Anderson argues that the VA's pretextual reason for Anderson's de-selection is alone enough to show a causal connection, but he also argues that the VA's 2015 internal-only posting of an air conditioning mechanic position is further evidence of retaliatory intent, since Anderson was not offered this position or even allowed to apply.

In the VA's reply brief, it argues that Anderson failed to show any sort of causal link between his statutorily protected activity in 2009 and his de-selection in 2012 in his response, but rather relied only on the same "mosaic" evidence that he offered in support of his discrimination claim. The VA argues that "those facts do nothing to suggest that Anderson's 2009 suit, rather than his lower interview scores, motivated his deselection," and therefore contends that it is entitled to summary judgment. (DE 33 at 10).

Here, it is evident that the first two requirements to prove retaliation under the direct method are present, as there is no dispute that Anderson engaged in protected activity by filing his 2009 discrimination claim, and there is no dispute that Anderson suffered an adverse employment action when the VA de-selected him from the air conditioning mechanic position in 2012. Thus, the question is whether Anderson has satisfied the third requirement—to show a causal link between the two. "Retaliation claims under Title VII require traditional but-for causation, not a lesser 'motivating factor' standard of causation." *Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499, 508 (7th Cir. 2014) (internal quotation marks and alteration notation omitted) (quoting *Reynolds v. Tangherlini*, 737 F.3d 1093, 1104 (7th Cir. 2013)); *see also Malin v. Hospira, Inc.*, 762 F.3d 552, 562 n.3 (7th Cir. 2014) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013)). While Anderson does not present direct evidence that the VA has admitted a retaliatory action, "circumstantial evidence can establish a causal link if the trier of fact can *infer* intentional discrimination." *Id.* (citing *Rogers v. City of Chi.*, 320 F.3d 748, 753 (7th Cir. 2003)). "Such circumstantial evidence may include suspicious timing, ambiguous statements of animus, evidence other employees were treated differently, or evidence the employer's proffered reason for the adverse action was pretextual." *Greengrass*, 776 F.3d at 486

(citing *Coleman*, 667 F.3d at 860).

Anderson has created a convincing mosaic of circumstantial evidence, which supports a causal connection between his protected activity and the adverse employment action. The VA argues that there is no suspicious timing, as "three years passed between the settlement of Anderson's 2009 complaint and the denial of his 2012 job application." (DE 24 at 18). "Suspicious timing is generally found when 'an adverse employment action follows close[ly] on the heels of protected expression.'" *Greengrass*, 766 F.3d at 486 (quoting *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012)). However, the timing between an EEOC complaint and the adverse action "is not the only relevant timeframe." *Id.*

Here, the combined timeline of the series of events is what creates suspicious timing. In 2008, Anderson was selected and then de-selected for an air conditioning mechanic position. (DE 24-5 at 17-19). Anderson then filed a discrimination claim against the VA, which was settled in May 2009, when the VA agreed to give Anderson a two-year term position as an air conditioning mechanic at NIHCS. (DE 24-18). Anderson's two-year term position expired on October 2011, when the VA refused to extend Anderson's position, even though extensions were "more likely to happen than not" and "there was still a need for an air conditioning mechanic." (DE 30-2 at 30). While it "tend[s] to take a long time" for new positions to be approved, specifically "months into years" (DE 30-2 at 33), the VA posted three new open air conditioning mechanic positions in February 2012 (DE 30-1 ¶ 28), just four months after refusing Anderson any extension. An inference can therefore be drawn that the VA was aware of the continued need for air conditioning mechanics when it refused to extend Anderson's term. Then, when Anderson applied and interviewed for the open positions, he was again selected and de-selected

for an air conditioning mechanic position; the de-selection occurred in April 2012. (DE 30-2 at 44-45).

A reasonable jury could conclude that the VA was retaliating against Anderson for his protected activity of filing a discrimination claim by not extending the term position he received in settlement of that claim, even though there was a continued need for air conditioning mechanics, and then by de-selecting him again when he was selected for one of the 2012 positions. *See Greengrass*, 776 F.3d at 486 ("Thus, a reasonable jury could find that IMS decided to retaliate against her not when she filed her charge, but when IMS saw that the EEOC was taking the charge seriously . . . ."); *see also Coleman*, 667 F.3d at 860 ("Even if the sequence of events alone would not be enough by itself, this sequence of protected activity and punitive action could lend some support to a reasonable juror's inference of retaliation." (citing *Hunt-Golliday v. Metro. Water Reclamation Dist.*, 104 F.3d 1004, 1014 (7th Cir. 1997))); *Loudermilk*, 636 F.3d at 315 (explaining that the determination of whether suspicious timing supports an adverse inference "depends on context," and stating that where "an inference of causation would be reasonable[,]" "[a] jury, not a judge, should decide whether the inference is appropriate").

Anderson has provided evidence of pretext as well. As discussed above with respect to his discrimination claim, the VA's stated reason for the adverse employment action has changed over time. While Andrick-Nieman's January 2013 explanation (together with Rhodes's statements to an EEO investigator that same month) for de-selecting Anderson was that the other three candidates were all preference eligible veterans, now the VA claims that only one of the candidates, Duzan, was a preference eligible veteran, and he was the one who had been passed over. Additionally, while the VA had claimed that Duzan had the highest interview score, now

the VA has stated that Duzan had the lowest interview score.  "Shifting and inconsistent explanations," such as those provided by the VA in this case, "can provide a basis for pretext." *Schuster*, 372 F.3d at 577 (citations omitted).

Accordingly, the evidence presented by Anderson regarding suspicious timing and pretext is sufficient for summary judgment purposes to establish a causal link between his protected activity and the adverse employment action taken against him by the VA.  Thus, summary judgment will not be granted as to Anderson's retaliation claim.  *See Greengrass*, 776 F.3d at 487 ("Where as here, there is a question of fact as to the believability of an employer's purported reasons for an employment decision then, even if the evidence presented by the plaintiff does not compel the conclusion that [his] employer discriminated against [him] when making its decision, at a bare minimum it suffices to defeat the employer's summary judgment motion." (citations, internal quotation marks, and internal alteration notation omitted)).

## IV.  CONCLUSION

For the foregoing reasons, the VA's motion for summary judgment (DE 23) is DENIED. The Court sets this case for a telephonic scheduling conference on April 14, 2017, at 10:00 a.m.

SO ORDERED.

Entered this 30th day of March 2017.

/s/ Susan Collins
Susan Collins,
United States Magistrate Judge